UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Philip Luther Parish, | Case No. 19-cv-1038 (NEB/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| R. Marques, *Warden*, | |
| Respondent. | |

Philip Luther Parish, Kalamazoo Probation Enhancement Program, 537 Chicago Avenue, Kalamazoo, MI 49048 (pro se Petitioner);[1] and

Ana H. Voss, Ann M. Bildtsen, and Chad A. Blumenfield, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

## I. INTRODUCTION

This matter is before the Court on pro se Petitioner Philip Luther Parish's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (ECF No. 1). The Petition has been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

---

[1] As discussed herein, Petitioner is no longer incarcerated at the federal correctional institution located in Sandstone, Minnesota ("FCI Sandstone"). Thus, the address on file with the Court is likely no longer correct. Respondent has provided the Court with Petitioner's current address in Michigan. (Suppl. Resp. at 2, ECF No. 12.) Therefore, the Clerk of Court is directed to update the address on file for Petitioner and send copies of this Report & Recommendation to both the Michigan address and FCI Sandstone (Philip Luther Parish, 14291-040, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072).

1

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **DISMISSED AS MOOT**.

## II. BACKGROUND

Petitioner is serving an 18-month sentence following a supervised-release violation in connection with his conviction for attempted manufacture of less than 50 grams of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. (Decl. of Lance Molis ¶ 4, ECF No. 9; Ex. A at 2 to Molis Decl., ECF No. 9-1.) Petitioner has a projected release date of September 25, 2019, via good conduct time.[2] (Second Decl. of Shannon Boldt ¶ 6, ECF No. 13; Ex. A at 1 to Second Boldt Decl., ECF No. 13-1.) At the time the Petition was filed, Petitioner was confined at FCI Sandstone.

Under the Second Chance Act of 2007, the Federal Bureau of Prisons ("BOP") "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment" serve up to the last 12 months of his sentence "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1); *see Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008). Appropriate conditions may include a community correctional facility or home confinement. 18 U.S.C. § 3624(c)(1), (2).

Petitioner was reviewed for pre-release placement in a residential reentry center ("RRC") in or around October 2018, and it was ultimately recommended that he be placed

---

[2] Petitioner's projected release date was updated during supplemental briefing "to reflect the change to the calculation of good conduct time under the First Step Act" that "took effect on July 19, 2019." (Suppl. Resp. at 2.) Petitioner's projected release date was previously October 6, 2019. (Molis Decl. ¶ 4; Molis Ex. A at 1; *see* Second Boldt Decl. ¶ 5.)

2

into an RRC on August, 8, 2019, a total of roughly 60 days. (Molis Decl. ¶¶ 12-13; *see generally* Ex. B to Molis Decl., ECF No. 9-2.) In considering the amount of time to recommend for Petitioner's pre-release placement, it was noted that Petitioner "was participating in educational programs, . . . making financial responsibility payments, and . . . participating in the release preparation program." (Molis Decl. ¶ 12; *see* Molis Ex. B at 3-5.) It was also noted that Petitioner intended to live with his girlfriend. (Molis Decl. ¶ 12; Molis Ex. B at 5.)

In or around the end of February or early March 2019, Petitioner made the BOP aware that he was no longer able to reside with his girlfriend upon release. (Ex. C to Mem. in Supp., ECF No. 3 at 22; Molis Decl. ¶ 14.) Based on this change in Petitioner's release plans, it was recommended that Petitioner receive an additional 30 days of pre-release RRC placement. (Ex. E to Mem. in Supp., ECF No. 3 at 27; Molis Decl. ¶ 14.) Petitioner was added to a waiting list to have his placement date moved up. (Molis Decl. ¶ 14; *see* Mem. in Supp. at 2.)

Petitioner filed the instant Petition, requesting that the Court order the BOP to reconsider the amount of his pre-release RRC placement because the BOP did not properly consider and apply the required factors. The Court ordered expedited briefing on this matter. (*See generally* Order, May 24, 2019, ECF No. 5.) On June 14, 2019, Respondent R. Marques filed a Response. (*See generally* Resp., ECF No. 7.) Any reply by Petitioner was due within 14 days of the Response, and none was received. (May 24 Order at 2.)

According to the online federal inmate locator tool maintained by the BOP, it appeared that, at least as of July 8, 2019, Petitioner had been placed in an RRC managed

3

by the RRM Detroit field office in Michigan. (Order at 3, July 17, 2019, ECF No. 11.) On July 17, 2019, the Court ordered supplemental briefing on the apparent change in circumstances and "what effect, if any, Petitioner's placement ha[d] on these proceedings." (July 17 Order at 3.)

Respondent filed a Supplemental Response on August 1, 2019. (*See generally* Suppl. Resp.) In the Supplemental Response, Respondent requested that this matter be dismissed as moot because Petitioner was transferred from FCI Sandstone to an RRC in Michigan on or about July 2, 2019. (Suppl. Resp. at 2; *see* Second Boldt Decl. ¶ 7; Ex. C at 1 to Second Boldt Decl., ECF No. 13-3.) Any reply by Petitioner was due by August 16, 2019, and none was received. (*See* July 17 Order at 3.)

### III. ANALYSIS

#### A. Mootness

"Article III of the United States Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies." *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003); *see* U.S. Const. art. III, § 2. The case-or-controversy requirement exists at all stages of federal judicial proceedings. *Potter*, 329 F.3d at 611. It is of no consequence that a claim was live at an earlier stage in the proceedings; a claim must be live when the court decides the issue. *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990).

"The 'case or controversy' requirement is not met if 'the question sought to be adjudicated has been mooted by subsequent developments.'" *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage

of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (alteration in original) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). If there is no longer an active case or controversy, the action is moot and must be dismissed. *Potter*, 329 F.3d at 611; *see Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) ("If an issue is moot in the Article III sense, we have no discretion and must dismiss the action for lack of jurisdiction.").

In the Petition, Petitioner requests that the Court order the BOP to reconsider his pre-release RRC placement for earlier release. Petitioner has since, however, been transferred out of FCI Sandstone and placed in an RRC. "[Petitioner's] placement in an RRC . . . leaves nothing for the Court to grant by way of relief, even if it determined that [his] claims had merit." *Buckles v. Wilson*, No. 14-cv-648, 2014 WL 5438495, at *4 (D. Minn. Oct. 22, 2014). Since Petitioner has received the relief sought, nothing in Petitioner's situation would change by granting the Petition. "This is the very definition of mootness." *Kargbo v. Brott*, No. 15-cv-2713 (PJS/LIB), 2016 WL 3676162, at *2 (D. Minn. July 6, 2016) (citing *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)).

Nevertheless, Petitioner's pre-release RRC placement does not automatically render the Petition moot. Mootness also requires analysis of potentially applicable exceptions to the mootness doctrine. *Sayonkon v. Beniecke*, No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)), *adopting report and recommendation*, 2012 WL 1622545 (D. Minn. May 9, 2012); *see, e.g.*, *Jefferson v. Jett*, No. 15-cv-3308 (PJS/BRT), 2016 WL 4196824, at *2 n.1 (D. Minn.

5

July 1, 2016), *adopting report and recommendation*, 2016 WL 4186943 (D. Minn. Aug. 8, 2016); *Buckles*, 2014 WL 5438495, at *4-5.  Under these exceptions, the Petition should not be dismissed as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Sayonkon*, 2012 WL 1621149, at *2 (quotation omitted).  The Court afforded Petitioner a reasonable opportunity to respond to Respondent's argument that the Petition is moot, and he has not done so.  *See Toliver v. Fondren*, No. 07-cv-4308 (DWF/JJG), 2009 WL 277542, at *2 n.1 (D. Minn. Feb. 4, 2009).  Further, for the reasons that follow, the Court finds that none of the exceptions to the mootness doctrine apply.

First, Petitioner has not identified any collateral consequences and it is difficult to see how any collateral consequences would flow from the BOP's pre-release RRC placement determination rather than Petitioner's underlying criminal conviction and sentence.  *See Buckles*, 2014 WL 5438495, at *4; *see also, e.g.*, *Vang v. Sessions*, 17-cv-1676 (SRN/BRT), 2017 WL 4773328, at *2 (D. Minn. Oct. 2, 2017) ("That Vang is subject to conditions of supervised release does not alter th[e] conclusion [that his petition is now moot], as those conditions are collateral consequences of his underlying removal order rather than his allegedly unlawful detention."), *adopting report and recommendation*, 2017 WL 4772409 (D. Minn. Oct. 20, 2017); *Lee v. Sessions*, No. 16-cv-2776 (DWF/SER), 2017 WL 1373873, at *3 (D. Minn. Mar. 9, 2017) ("Here, there is no continuing injury based on Lee's conditions of release because they are not a collateral consequence of his allegedly

6

illegal detention, which is the subject of his Petition."), *adopting report and recommendation*, 2017 WL 1373259 (D. Minn. Apr. 13, 2017).

Second, this case does not involve conduct that is capable of repetition yet evading review. Should Petitioner be taken back into custody, it would be based on a new set of facts and circumstances, such as "violating the standards of the RRC or the conditions of his supervision." (Suppl. Resp. at 4.) If Petitioner were brought back into custody, he would be free to bring a new habeas petition based on such new facts and circumstances. Because the pre-release RRC placement determination upon which the Petition is based cannot be repeated under the same circumstances, the conduct at issue does not meet the capable-of-repetition-yet-evading-review exception. *See Buckles*, 2014 WL 5438495, at *5.

Third, there is no indication that the BOP placed Petitioner into an RRC earlier "simply to avoid judicial review of its prerelease determination or that it is free to reinitiate the challenged conduct once this case is dismissed." *Jefferson*, 2016 WL 4196824, at *2 n.1. In fact, Petitioner was already on a waiting list for earlier placement at the time the Petition was filed.

Fourth, this is not a certified class action.

Accordingly, the Court concludes the Petition is moot and must be dismissed for lack of jurisdiction. *See Miller*, 527 F.3d at 756; *see, e.g.*, *Zegarac v. Nickrenz*, No. 15-cv-2193 (PJS/TNL), 2015 WL 4396852, at *1 (D. Minn. July 17, 2015); *Buckles*, 2014 WL 5438495, at *1; *Toliver*, 2009 WL 277542, at *1.

## B. Not Entitled to Habeas Relief

Moreover, although this Court need not reach the merits of the Petition, Petitioner would not otherwise be entitled to relief even if the Petition were not moot. As stated above, under the SCA, the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment" serve up to the last 12 months of his sentence "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). To determine whether an inmate is eligible to complete his sentence in a community correctional facility or home confinement, the BOP considers the following factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*Id.* § 3621(b); *see id.* § 3624(c)(6). Ultimately, placement decisions by the BOP must be "conducted in a manner consistent with section 3621(b)"; "determined on an individual basis"; and "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The "[d]iscretionary decisions made by the BOP under §§ 3621(b) and 3624(c) regarding the prerelease placement of federal prisoners are exempt from the judicial review provisions of the Administrative Procedure Act ('APA')." *Jefferson*, 2016 WL 4196824,

at *2; *accord Simon v. LaRiva*, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *4 (D. Minn. Mar. 10, 2016), *adopting report and recommendation*, 2016 WL 1610603 (D. Minn. Apr. 21, 2016); *see also* 18 U.S.C. § 3625. "Although the Court is barred by 18 U.S.C. § 3625 from reviewing a discretionary determination made by the BOP, judicial review remains for claims that the BOP has acted contrary to federal law, violated the United States Constitution, or exceeded its statutory authority." *Simon*, 2016 WL 1626819, at *7 (citing *Ambrose v. Jett*, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013)); *accord Berry v. Marques*, No. 18-cv-934 (SRN/TNL), 2018 WL 3750543, at *4 (D. Minn. July 18, 2018), *adopting report and recommendation*, 2018 WL 3748179 (D. Minn. Aug. 7, 2018).

### 1. Special Conditions of Petitioner's Supervised Release

Petitioner's sentence included 36 months of supervised release. (Molis Decl. ¶ 4; Molis Ex. A at 2.) In relevant part, the special conditions imposed as part of Petitioner's supervised release provide:

> 1. For the first three (3) months of supervision, you must participate in an inpatient program of testing and treatment for substance abuse, as directed by the probation officer, and follow the rules and regulations of that program until such time as you are released from the program by the probation officer, and shall pay at least a portion of the cost according to your ability, as determined by the probation officer. . . .
>
> . . .
>
> 4. Following release from the inpatient substance abuse program, you must reside at a Residential Re-Entry Center (RRC) as designated by the Bureau of Prisons (BOP) for a period of 3 months. . . .

(Ex. C at 5 to Molis Decl., ECF No. 9-3.)

### 2. Habeas Claims

Although framed in different ways throughout his Petition and supporting memorandum, Petitioner appears to be claiming that the BOP unlawfully determined his pre-release RRC placement in two ways: (1) the BOP acted contrary to federal law by not considering the statements made by the sentencing court, i.e., not taking into account the special conditions imposed, and (2) the BOP exceeded its statutory authority by allowing third parties to determine his placement.

#### a. Statements by the Sentencing Court

Petitioner argues that the BOP did not properly consider the fourth § 3621(b) factor by not taking into account the special conditions imposed by the sentencing court. As best as this Court is able to tell, it is Petitioner's position that the special conditions of his supervised release dictate that Petitioner receive 180 days of pre-release RRC placement (90 days of in-patient substance abuse treatment followed by 90 days of RRC placement), and therefore he should have been released on April 5, 2019. Rather than "formulating a pre-release plan that would comply with the Judge's special conditions requiring [him] to spend 180-days in an RRC," Petitioner asserts that "the BOP has misconstrued its obligations and left Petitioner 90 days short of a plan that addresses his re-entry into the community." (Mem. in Supp. at 14 (quotation omitted).)

Petitioner's argument is based on a fundamental misunderstanding of supervised release. Petitioner's *pre-release* RRC placement is not part of his supervised release. The *pre-release* placement RRC determination by the BOP was made in connection with the

10

prison term Petitioner is serving. *See* 18 U.S.C. § 3624(c)(1). Pre-release RRC placements occur prior to the end of a prison term. *See id.* Conversely, supervised release "does not commence until an individual is released from imprisonment." *United States v. Johnson*, 529 U.S. 53, 57 (2000) (quotation omitted). "A term of supervised release comes after imprisonment, once the prisoner is released by the [BOP] to the supervision of a probation officer. Supervised release does not run while an individual remains in the custody of the [BOP]." *Id.* (quotation omitted); *see* 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.")

Thus, Petitioner's supervised release begins *after* he is released from the prison term he is serving in BOP custody. 18 U.S.C. § 3624(e); *Johnson*, 529 U.S. at 57-58. Accordingly, while Petitioner may not be physically confined in a prison, Petitioner's pre-release RRC placement is part of his prison term, not his supervised release. Once Petitioner has been released by the BOP from his prison term, he will begin his supervised release, and his probation officer will administer his supervised release in accordance with the conditions set by the sentencing court. *See* 18 U.S.C. § 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court.").

11

Notably, the sentencing court rejected a similar argument Petitioner previously made to incorporate the special conditions of his supervised release into his prison term. Following the BOP's recommendation of 60 days of pre-release RRC placement, Petitioner filed a motion pursuant to 28 U.S.C. § 2255 with the sentencing court in the United States District Court for the Western District of Michigan. *See generally United States v. Parish*, No. 1:09-cr-116-PLM (2255 Motion, ECF No. 244). Petitioner argued that his prison term "was for a *total* of eighteen (18) months of which three (3) months would be at a *supervised* program of testing and treatment for substance abuse and three (3) months of local halfway house." (2255 Motion at PageID.791.)

The sentencing court denied Petitioner's § 2255 motion, stating:

> [T]he Judgment of the Court is clear and unambiguous. In relevant part it states: "The defendant's term of supervised release is revoked, and the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of eighteen (18) months." (ECF No. 240 at PageID.772.) "Upon release from imprisonment," the Court further imposed a thirty-six-month term of supervised release upon Defendant. (*Id.* at PageID.773.) The Court further imposed Special Conditions upon Defendant's Supervision, including that Defendant would spend the first three months of supervision participating in an inpatient substance abuse program, (PageID.775), and that following release from the inpatient substance abuse program, Defendant would then "reside at a Residential Re-Entry Center . . . for a period of 3 months." (*Id.*) . . . The Court imposed upon him a term of eighteen months in federal custody and an additional thirty-six months of supervised release.

*Parish*, No. 1:09-cr-116-PLM (Order at PageID.815-16, Feb. 13, 2019, ECF No. 248) (first alteration in original). Petitioner is essentially making the same argument to this Court.

In sum, Petitioner's claim that the BOP acted contrary to federal law by not properly

considering the special conditions imposed by the sentencing court in connection with his supervised release when determining his pre-release RRC placement is based on an erroneous interpretation of his sentence—an interpretation already rejected by the sentencing court. Because Petitioner's supervised release does not begin until he has completed his prison term, Petitioner's contention that the BOP should have incorporated the special conditions of his supervised release into his pre-release RRC placement at the end of his prison term is without merit.

### b. Third-Party Determination

Petitioner also claims that the BOP exceeded its statutory authority by allowing a third-party to make his pre-release RRC placement determination. Again, as best as this Court is able to tell, Petitioner's claim is based on responses by prison staff members referring him to his probation officer to address the special conditions of his supervised release. Petitioner claims that "the [BOP] has concluded that [his] ultimate term of community placement will be designated by a third-party Probation Officer or the RRC, who will be left to interpret [his] special conditions." (Mem. in Supp. at 8.)

In support of his argument, Petitioner relies on *Ambrose*, in which the RRC itself, a private contractor, rather than the BOP denied the prisoner's placement due solely to the prisoner's convicted offense. 2013 WL 6058989, at *3, 8. The *Ambrose* court found that "the RRC, an independent contractor, had no authority to make this determination, much less based on only one of many factors that must be considered pursuant to § 3621(b). The duty for evaluating and determining placement of inmates rests with the BOP and not some third-party RRC." *Id.* at *8 (citation omitted). The *Ambrose* court found the BOP could

13

not "hide behind the actions of one private contractor and claim that it has complied with the statutory obligations dictated by §§ 3621(b) and 3624(c)." *Id.*

Here, Petitioner's pre-release RRC placement decision was made within the BOP. (*See* Molis Decl. ¶¶ 12-14; Molis Ex. B.)  BOP staff members most often referred Petitioner to his probation officer for questions about substance abuse treatment and RRC placement *while on supervised release*, referred to as "public law" time/placement.[3]  (*See, e.g.*, Exs. B, I to Mem. in Supp., ECF No. 3.)  It is true that, when Petitioner first asked for additional pre-release RRC time due to his changed living situation, BOP staff referred Petitioner to his probation officer and instructed him to request additional "public law time."  (Ex. C to Mem. in Supp., ECF No. 3.)  Following meetings between BOP staff and Petitioner and Petitioner's pursuit of the grievance process, however, the BOP increased Petitioner's pre-release RRC time by 30 days based on his changed circumstances.  (*See* Mem. in Supp. at 5-6; Ex. E to Mem. in Supp.)  Thus, unlike *Ambrose*, the BOP did not rely on third parties when making Petitioner's pre-release RRC placement determination.  *See, e.g.*, *Berry*, 2018 WL 3750543, at *4; *Nugent v. Marques*, No. 18-cv-827 (WMW/LIB), 2018 WL 3653197, at *5 (D. Minn. June 8, 2018), *adopting report and recommendation as modified*, 2018 WL 3650158 (D. Minn. Aug. 1, 2018); *Winters v. Marques*, No. 18-cv-1019 (WMW/HB), 2018 WL 4473543, at *5 (D. Minn. May 25, 2018), *adopting report and recommendation*, 2018

---

[3] *See, e.g.*, Office of the Inspector General, U.S. Dep't of Justice, Audit of the Fed. Bureau of Prisons' Mgmt. of Inmate Placements in Residential Reentry Centers & Home Confinement 16 (Nov. 2016) (describing "public law placement" as when "the judge places the inmate in an RRC as a condition of their supervised release"), *available at* https://oig.justice.gov/reports/2016/a1701.pdf; Memorandum from Blake R. Davis, Assistant Dir., Corr. Programs Div., Fed. Bureau of Prisons, U.S. Dept. of Justice, Guidance for Home Confinement & Residential Reentry Center Placements 4 (May 24, 2013) ("discuss[ing] a possible public law placement wherein the judge places the individual in an RRC after their release from Bureau custody as a condition of supervised release"), *available at* https://www.bop.gov/foia/rrc_hc_guidance_memo.pdf.

WL 3831348 (D. Minn. Aug. 13, 2018).

### C. Summary

In the end, the Court need not reach either the merits of the Petition or the question of exhaustion[4] because the Petition is now moot. The Court therefore recommends that this action be dismissed.

[Continued on next page.]

---

[4] Petitioner concedes that his administrative remedies have not yet been exhausted, and Respondent initially identified this failure as a basis to dismiss the Petition. (Pet. at 3; Resp. at 1, 6-8.) The judicially-created exhaustion requirement can, however, be waived. *See Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007); *United States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998); *see, e.g.*, *Winters*, 2018 WL 4473543, at *3; *Berry*, 2018 WL 3750543, at *2 n.3; *Nugent*, 2018 WL 3653197, at *2-3; *Simon*, 2016 WL 1626819, at *3-4.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (ECF No. 1) **BE DISMISSED AS MOOT.**


Date:  September  13  , 2019              *s/ Tony N. Leung*
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota


                                          *Parish v. Marques*
                                          Case No. 19-cv-1038 (NEB/TNL)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).